# In the United States Court of Federal Claims

No. 17-1600L
Filed: April 2, 2019

|  |  |
|---|---|
| ANSLEY WALK CONDOMINIUM ASSOCIATION, INC., *et al*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

*Steven M. Wald*, Stewart Wald & McCulley, LLC, St. Louis, MO, for plaintiffs.

*Elizabeth R. McGurk*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

**SMITH, Senior Judge**

    This case is before the Court on plaintiffs' Partial Motion for Summary Judgment. *See* Plaintiffs' Motion for Partial Summary Judgment on Liability (hereinafter "Pls.' MSJ"). Plaintiffs, Ansley Walk Condominium Association, Inc., and Mr. Nelson Goetz, seek just compensation and other relief under the Takings Clause of the Fifth Amendment of the United States Constitution. *Id.* at 1. Plaintiffs allege that the United States Surface Transportation Board's ("STB") conversion of an area of rail line into a recreational trail, pursuant to the National Trails System Act ("Trails Act"), "effected a taking of plaintiffs' property" pursuant the Fifth Amendment. Pls.' MSJ at 5 (citing 16 U.S.C. § 1247). For the reasons set forth below, the Court grants Plaintiffs' Motion.

**I.   Background**

    The land in dispute is a segment of a former rail line in Atlanta, Georgia, commonly known as the Decatur Street Belt ("Belt"). Plaintiffs' Exhibit (hereinafter "Pls.' Ex.") A at 4; Pls.' Ex. D at 30. In 1869, the Georgia Air Line Railway Company ("Georgia Air") acquired the land in dispute in order to install a rail line. *See* Pls.' Ex. H-1; Pls.' Ex. H-2. The land in dispute was used by a variety of rail companies over the next 150 years. *See* Defense Exhibit (hereinafter "Def.'s Ex.") A at 28-29.

On March 27, 2017, the Norfolk Southern Corporation ("Norfolk Southern"), the then-user of the rail line, filed its intent to abandon rail service over .68 miles of the Belt with the STB. Pls.' Ex. A at 2. On September 28, 2017, the STB issued a Notice of Interim Trail Use ("NITU") for the land in dispute. Pls.' Ex. C at 1. On October 17, 2017, Norfolk Southern and the Atlanta Beltline, Inc. ("ABI"), a "non-profit corporation and instrumentality of the City of Atlanta," filed a trail use agreement with the STB. Pls.' Ex. B at 2. At the time the NITU was issued, plaintiffs owned or leased property that abutted the land in dispute. *See* Stipulations Regarding Title Matters (hereinafter "Joint Stipulation") at 2.

Plaintiffs filed their original Complaint on October 25, 2017, their First Amended Complaint on January 24, 2018, and their Second Amended Complaint on May 14, 2018. *See generally* Complaint; First Amended Complaint; Second Amended Complaint. On September 14, 2018, plaintiffs filed their Motion for Partial Summary Judgment on Liability, and Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment on Liability. *See generally* Pls.' MSJ; Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment on Liability (hereinafter "Pls.' MSJ Memo."). On October 12, 2018, defendant filed its Response to Plaintiffs' Motion for Partial Summary Judgment on Liability, and Cross-Motion for Summary Judgment, and Memorandum in Support. *See generally* Defendant's Response to plaintiffs' Motion for Partial Summary Judgment on Liability, and Cross-Motion for Summary Judgment (hereinafter "Def.'s Cross MSJ").

On October 29, 2018, plaintiffs filed their Response to the defendant's Cross-Motion for Partial Summary Judgment on Liability and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment on Liability. *See generally* Plaintiffs' Response to the Defendant's Cross-Motion for Partial Summary Judgment on Liability and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment on Liability (hereinafter "Pls.' Resp."). On November 27, 2018, defendant filed its Reply to Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment on Liability. *See generally* Defendant's Reply to Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment on Liability (hereinafter "Def.'s Reply"). Both motions are fully briefed and ripe for review.

## II.   Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Rules of the Court of Federal Claims ("RCFC") 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 250. In determining the propriety of summary judgment, a court will not make credibility determinations and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### III.  Discussion

#### A.  Standing

Defendant argues that plaintiffs, Ansley Walk Condominium Association, Inc., Ansley-Monroe Villa Condominium Association, Inc., ("Associations") and Mr. Goetz, lack standing to pursue their claims. *See* Def.'s Cross MSJ at 31, 34. Defendant states that the Associations lack an interest in the property in dispute, as the Associations themselves do not technically own the property abutting the rail line, but rather, the individual condominium unit owners do. Def.'s Cross MSJ at 34–35. The defendant also argues that, absent an express waiver by the United States, the Associations cannot bring the action in this Court. *Id.* at 36 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Finally, defendant posits that Mr. Goetz, as a long-term lease holder, lacks standing because he lacks an ownership interest in the property in dispute. *Id.* at 31.

The Court is not persuaded by these arguments. The Associations are both organized pursuant to the Georgia Condominium Act ("GCA"). *See* Pls.' Ex. at 257, 360*; see also* Ga. Code Ann. § 44-3-70. The GCA grants condominium associations "standing to . . . represent in, or defend, in its own name, litigation . . . concerning claims or other matters relating to any portions of the units or common elements which the association has the responsibility to administer, repair, or maintain." Ga. Code Ann. § 44-3-106(h). The GCA further states that, "such capacity, power, and standing shall not be waived, abridged, modified, or removed by any provision of any contract or document, including the condominium instruments, that were recorded, entered into, or established prior" to the adoption of the statute. *Id.* Under the GCA, "common elements" are defined as "all portions of the condominium other than the units." *Id.* § 44-3-71(4).

Aside from this explicit statutory grant, the Associations are representatives of people who own the property in dispute, as per their bylaws. Pls.' Ex. E at 256–262, 360-415. It would be counter-intuitive to require each individual unit owner to sue for their percentage of the common space property right, as the government suggests, rather than allow the condominium associations to represent the rights of *all* the condominium owners by suing on their behalf. *See* Def.'s Cross MSJ at 36. If the condominium associations sued on their own behalf, rather than on behalf of the owners as a whole, then the government's standing argument would seem more compelling. However, it seems clear to the Court that the associations' claims are for the sole

benefit of the owners. Given the Association's statutory grant and representative capacity, defendant's argument is unpersuasive.

The Court further finds that Mr. Goetz, as a long-term lease holder of property adjacent to the land in dispute, has standing. *See* Pls.' Ex. A at 153–157. Georgia law holds that landowners' real property rights extend to the centerline of an abandoned railroad line. *Fambro v. Davis*, 348 S.E.2d 882, 884 (Ga. 1986) (citing *Marietta Chair Co. v. Henderson,* 49 S.E. 312 (Ga. 1904); *Calvary Independent Baptist Church v. City of Rome,* 66 S.E.2d 726 (Ga. 1951)). While state law defines property rights, this Court follows federal precedent on issues involving standing. The U.S. Supreme Court has found leaseholders may bring suits under the Takings Clause when the United States has temporarily deprived them of a portion of their property interest in the lease. *United States v. General Motors*, 323 U.S. 373 (1945).

The Court sees no reason to question the wisdom of such precedent, nor its reasonable application, which has held that, in matters of standing, long-term lease holders should be treated no differently than fee owners when the United States temporarily deprives them of a portion of their property interest. In keeping with that precedent, the Court finds that long-term lease holders who own property adjacent to abandoned railroad lines should be afforded the same centerline assumption as fee owners. As Mr. Goetz holds a valid long-term lease under Georgia law and his Takings claim concerns a temporary taking of a portion of his leasehold property interest, the Court finds that he has standing to pursue his 5th Amendment Takings claim.

### B. The Trails Act

The purpose of the Trails Act is to convert unused railroad rights-of-way into recreational trails. *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006). A plaintiff can assert a Fifth Amendment takings claim "when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010). Moreover, the STB is charged with regulating the construction, operation, and abandonment of railroad lines in the United States. *Chic. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 311–12 (1981); *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004). Importantly, the STB must grant a railroad approval to discontinue or abandon an area of railroad. *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 137 (D.C. Cir. 1998).

A railroad may terminate active rail service in several ways, including using a process known as "railbanking." *Caldwell v. United States*, 57 Fed. Cl. 193, 194 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004) (internal quotations omitted). Railbanking is a form of discontinuance, but the rail company's right-of-way is said to be "banked until such time as railroad service is restored." *Id.*. Unlike standard discontinuance, railbanking allows a third party to accept full responsibility of the railroad corridor, allowing interim trail use until active rail service is restored.

To utilize the railbanking process, the railroad files either an application to abandon or, as in the case at bar, a request for an exemption. *Caldwell*, 391 F.3d at 1229; Pls.' Ex. A at 2.

Once the STB approves the request for exemption, a local, state, or private party ("trail operator") submits a proposal to assume financial and operational control of the rail line area. *Caldwell*, 391 F.3d at 1230. Federal regulations require the trail operator's proposal to include an assumption of responsibility for the right-of-way and an acknowledgment that trail use is subject to the "possible future reconstruction and reactivation of the right-of-way for rail service." 49 C.F.R. § 1152.29(a)(1)–(3).

After the trail operator submits a proposal for the new operation, and the STB accepts the proposal, the STB then issues a NITU, which indefinitely stays the abandonment process, authorizes trail use, and "retains jurisdiction for possible future railroad use" with the STB. *Caldwell*, 391 F.3d at 1230; *see also Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267 F.3d 1144, 1150 (D.C. Cir. 2001). Issuance of the NITU operates as the catalyst for a Takings Claim under the Trails Act. *Barclay*, 443 F.3d at 1373 (quoting *Caldwell*, 391 F.3d at 1233–34). As the Federal Circuit has explained,

> [a]bandonment is suspended and the reversionary interest is blocked 'when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d) of the Trails Act.' We concluded that '[t]he issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way.' Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.

*Id.* (internal citations omitted) (emphasis in original).

The Court begins its analysis by first determining the property interest in the deed or deeds in question. *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc). In this case, the Court must determine whether the deed from Jerome Bearse to Georgia Air ("Bearse Deed") and the deed from James M. Liddell to Georgia Air ("Liddell Deed") conveyed fee or an easement to the railroad company. *See* Pls.' Ex. H-1, H-2. If the deeds conveyed easements, the Court then must ascertain whether the scope of those easements was broad enough to include recreational trail usage. *Id.* The Court must then discern whether, even if the easements were broad enough to include recreational usage, the railroad's easements terminated prior to the issuance of the NITU, such that the property owners "held fee simples unencumbered by the easements." *Id.* Finally, the Court must determine whether the United States' action "amounted to a compensable taking" of plaintiffs' alleged interest in the property at issue. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013).

### a.  Georgia Standard of Review

Before determining whether the STB violated plaintiffs' Fifth Amendment rights upon execution of the NITU, in accordance with the Rails to Trails law, the Court must determine what interest, if any, plaintiffs have in the property in dispute. As state law defines property rights, the Court applies Georgia law to the Bearse and Liddell deeds. *See Hardy v. United States* (*Hardy I*), 127 Fed. Cl. 1, 8 (2016) (citing *Preseault*, 100 F.3d at 1533). Specifically, the

Court must first ascertain whether the Bearse and Liddell deeds conveyed property to the railroad in fee or conveyed "merely an easement." *Id.* (citing *Askew v. Spence*, 79 S.E.2d 531, 531 (Ga. 1954)).

Georgia precedent requires the Court to examine each instrument as a whole. *See Barber v. Southern Ry. Co*, 274 S.E.2d 336 (Ga. 1981); *Jackson v. Rogers*, 54 S.E.2d 132 (Ga. 1949); *Jackson v. Sorrells*, 92 S.E.2d 513 (Ga. 1956); *Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 108 (2000). These factors include "the recital in the deed, the contract, the subject-matter, the object, purpose, and nature of the restriction or limitations, if any, or the absence of such, and the attendant facts and circumstances of the parties at the time of the making of the conveyance." *Latham Homes Sanitation*, 538 S.E.2d at 108 (citing *Jackson v. Rogers*, 54 S.E.2d at 132).

While no single factor is dispositive, inclusion of specific language in a deed can "carry significant weight" in determining whether the instrument conveyed fee or an easement. *Hardy I*, 127 Fed. Cl. at 9; *see also Jackson v. Rogers*, 54 S.E.2d at 132; *Sorrells*, 92 S.E.2d at 513; *Askew*, 79 S.E.2d at 531. The nature of plaintiffs' interest in the property in dispute is controlled by the deeds, and courts must determine whether the instruments either "convey the title of the lands therein referred, [or] to merely an easement for railroad purposes." *Askew*, 79 S.E.2d at 531. At a foundational level, Georgia property law presumes fee, though the inclusion of the phrase "forever in fee simple" does not end the Court's inquiry. *Jackson v. Rogers*, 54 S.E.2d at 136. The inclusion of warranty language suggests a conveyance in fee, and substantial consideration also points toward conveyance in fee. *Id.* at 136; *Johnson v. Valdosta, Moultrie & W. R.R. Co.*, 150 S.E. 845, 847 (Ga. 1929).

Meanwhile, nominal consideration suggests an easement. *Jackson v. Rogers*, 54 S.E.2d at 134; *Askew*, 79 S.E.2d at 532. A deed that grants a railroad a "right of way" also indicates intent to convey an easement. *Jackson v. Crutchfield*, 191 S.E. 468, 470 (Ga. 1937). Similarly, a deed that qualifies the conveyance as "for railroad purposes" points toward an easement. *Askew*, 79 S.E.2d at 532. The reservation of rights, such as cultivation rights, further indicates intent of easement. *See Crutchfield*, 191 S.E. at 470; *Sorrells*, 92 S.E.2d at 514; *see also Hardy v. United States* (Hardy II), 129 Fed. Cl. 513, 516 (2016). Moreover, Georgia state code mandates that, if "a corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken." *Hardy I*, 127 Fed. Cl. at 8 (citing Ga. Code Ann. § 5233 (1910)). Lastly, Georgia common law seeks to avoid "long, narrow strips of land owned by people other than the adjacent land-owner," which would include rail lines. *Descendants of Bulloch, Bussey & Co. v. Fowler*, 475 S.E.2d 587, 589 (Ga. 1996).

### b. The Bearse Deed

After careful consideration, the Court finds that the Bearse deed conveyed an easement to Georgia Air. The Bearse deed reads in relevant part:

> In consideration of the benefit and advantage to me accruing by the construction…of the Georgia Air Line Rail Road as well as the receipt of Two hundred dollars to me paid. I have this day bargained and sold and do hereby

>transfer and Convey unto the Georgia Air Line Rail Road Company and its successors and assigns all the land contained within one hundred feet in width on each side of the Track [o]r Roadway (measuring from the center) of any portion of the lot of land hereinafter described through which said Rail Road may be constructed run and operated the land hereby conveyed being cut off and a portion of land lots number [] in the 17th… of one originally Henry now Fulton County Ga and Jerome Bearse reserves the privilege of cultivating the Company right of way up to the tract on either side the same being the place whereon said Bearse now lives.
>
>To have and to hold said tract or parcel of land unto said Georgia Air Line Rail Road Company for Rail Road purposes for ever in fee simple
>
>Witness my hand and seal this 29th day of April AD 1869 Signed sealed and delivered

Pls.' Ex. H-1.

Georgia case law begins with the presumption of a transfer in fee. *Jackson v. Rogers*, 54 S.E.2d at 136. Certain aspects of the Bearse instrument strengthen this presumption of fee. Mr. Bearse received non-nominal consideration of $200. *See generally* Pls.' Ex. H-1. The phrase to "its successors and assigns," is indicative of intent to convey fee. Pls.' Ex. H-1; *see Rogers v. Pitchford*, 184 S.E. 623, 624 (Ga. 1936). The habendum clause states, "for ever in fee simple." *See* Pls.' Ex. H-1. These aspects suggest that the Bearse deed is similar to the *Rogers* deed, which the Georgia Supreme Court ruled it conveyed property in fee. *See Jackson v. Rogers*, 54 S.E.2d at 138.

While these factors may appear to weigh in favor of conveyance in fee, such a reading fails to accurately capture the full meaning of the deed and would ignore Georgia precedent and federal interpretation.[1] Though substantial consideration suggests conveyance in fee, the very

---

[1] In an exhibit attached to its Response and Cross-Motion for Summary Judgment, defendant provided the hearing transcript for a Georgia District Court case, which dealt with, in whole or in part, the property at issue in plaintiffs' Complaint. Def.'s Ex. F. According to the defendant, that court found that the Bearse deed conveyed fee. *Id.* However, such a finding seems to contradict decades of Georgia Supreme Court precedent, which repeatedly held that a determination of whether a deed conveys fee or an easement centers on the "particularly [sic] facts and circumstances" of each case, but with certain language or phrases weighing heavily on the analysis. *Askew*, 79 S.E.2d at 532; *Sorrells*, 92 S.E.2d at 514; *Barber* 274 S.E.2d at 337. Moreover, while Georgia law defines property rights, state court decisions generally have no precedential value in this Court, so Georgia law is, at best, merely persuasive in a Fifth Amendment Takings analysis. *See Hage v. U.S.*, 51 Fed. Cl. 570, 575 (2002) (denying stay in a Fifth Amendment takings case pending determination of state water rights). Finally, the Georgia District Court case concerned alleged "encroachments" by private landowners on property owned in part by ABI; it was not a Takings claim that centered on the nature and usage of a

nature of railroad easements—invasive, noisy, and potentially perpetual operations—readily explains why a grantor might require a non-nominal fee in exchange for such an easement. *See New Mexico v. U.S. Trust Co.*, 172 U.S. 171, 183 (1898) (describing the characteristics of railroad easements); *see also Duggan v. Dennard*, 156 S.E. 315, 316 (Ga. 1930) (describing the disruption of railroad operations on a grantor's property). Additionally, the mere inclusion of the terminology "in fee simple" does not necessarily indicate a conveyance of fee. *Atlanta, B. & A. Ry. Co. v. Coffee Cty.*, 110 S.E. 214, 215 (Ga. 1921).

Several aspects of the Bearse deed suggest the instrument conveyed an easement. First, the instrument describes the "Company right of way," which Georgia property law generally interprets as conveyance of an easement. *Crutchfield*, 191 S.E. at 470. The Bearse deed also specifies that the railroad received the parcel "for rail road purposes." Pls.' Ex. H-1. This language is also contained in the deed at issue in *Askew v. Spence*, where the Georgia Supreme Court found the instrument conveyed an easement. 79 S.E.2d at 532. While not determinative, such language indicates intent by Mr. Bearse to limit the scope of the deed and the behavior of Georgia Air, and weighs in favor of finding the deed as an easement.

Additionally, the Bearse deed contained no warranty clause, the absence of which the Georgia Supreme Court considers a factor leading to interpretation as an easement. *Askew*, 79 S.E.2d at 532; *see also Crutchfield*, 191 S.E. at 470. The description of the land conveyed in the Bearse deed is also generalized, with the transferred land listed merely as "a portion of land lots number [blank] . . . of one originally Henry now Fulton County Ga." Pls.' Ex. H-1 (alteration in original). This generalized nature of the land conveyed is further illustrated in the phrase "*any* portion of the lot of land hereinafter described, which said Rail Road *may* be constructed, run and operated." *Id*. (emphasis added). The Court fails to see how a conveyance of fee, which necessarily relates to unique, specific real property, could be executed in such vague, conditional, and undefined terms. The two concepts seem oppositional.

Furthermore, the Bearse deed retains the rights of cultivation. *See* Pls.' Ex. H-1. The Georgia Supreme Court has noted that the presence of such retention language suggests an easement, and implies that such a holding is well-settled in Georgia. *Sorrells*, 92 S.E.2d at 514. This Court has previously held that in deed disputes construed under Georgia law, the "particular terminology" of cultivation retention "typically indicates an easement." *Hardy II*, 129 Fed. Cl. at 516.

While the Bearse deed uses the word "privilege" instead of "right" when describing the cultivation retained, the Court finds no legally significant difference between the two words in the context of this deed. The effect of such retention is the same, regardless of either word used. Indeed, it seems incongruous to the Court that a granting party would convey fee title to a rail

---

recreational trail. *See* Def's Ex. F at 27. In light of the limited usefulness of the Georgia District Court case, the distinguishability from the Case at bar, and the fact that such a ruling seems to directly contradict the holdings of the state's highest court, this Court deems it unhelpful as a tool in the analysis of the claims currently before it.

company while retaining the substantial and invasive ability to exploit the railroad's property for the seller's own benefit, particularly given the non-nominal consideration contained in the Bearse deed.

Finally, the Court is mindful of the so-called "Stripes and Gorges" doctrine, adopted by Georgia courts, which discourages conveyance of fee that results in long, narrow areas of land. *Hardy I*, 127 Fed. Cl. at 10 (citing *Fambro*, 348 S.E.2d at 884 (quoting *Johnson v. Arnold*, 18 S.E. 370 (Ga. 1893))). From a policy perspective, this doctrine seeks to preserve land that is more economically appealing, thereby promoting, rather than inhibiting market forces. The Court is persuaded that such a policy is applicable here, as the Bearse deed specifically notes that the "land conveyed being cut off." Pls.' Ex. H-1. Taken together, the language of the deed in question, Georgia property law, and well-established precedent persuade the Court that the Bearse deed conveyed an easement to Georgia Air.

### c. The Liddell Deed

The Court also finds that the Liddell deed conveyed an easement. The Liddell deed is substantively similar to the Bearse deed, but distinct enough to merit separate analysis. *See generally* Pls.' Ex. H-1; Pls.' Ex. H-2. The Liddell deed reads in relevant part:

> In consideration of the benefit and advantage to me accruing by the construction of the Georgia Air Line Railroad as well as the receipt of Three hundred and eighty five [sic] dollars of the to me in hand paid. I have this day bargained and sold and do hereby transfer and Convey unto the Georgia Air Line Railroad Company and its successors and assigns all the land contained within One Hundred feet in width on each side of the track or Roadway (measuring from the center) of any portion of the Land hereinafter described through which said Rail Road may be constructed, run and operated. The land hereby conveyed being cutt [sic] off and a portion of land lot number Fifty Six in the 17th…of originally Henry now Fulton County Ga In being the amount awarded by N.M. Robinson J.W. Craig and R.M. Head appraisers of it is now agreed that J.M. Liddell is to have the privilege of cultivating said right of way but that his is not to hold the said Railroad responsible for any injury done to the growing crop by accident or [adverse] on the said Two hundred feet of right of way.
>
> To have and to hold said tract or parcel of land unto said Georgia Air Line Railroad Company for Rail Road purposes forever in fee simple.
>
> Witness my land and seal this 17th day of Sep. AD 1869.

Pls.' Ex. H-2.

As with the Bearse deed, well-established Georgia property law begins with the presumption that the Liddell deed conveyed fee. *Jackson v. Rogers*, 54 S.E.2d at 136. Furthermore, the Liddell deed contained substantial consideration of $385 dollars, more than the Bearse deed. *See generally* Pls.' Ex. H-1; Pls.' Ex. H-2. The phrase to "its successors and

assigns" appears in the Liddell deed, which is indicative of intent to convey a fee. Pls.' Ex. H-2; *see also Pitchford*, 184 S.E. at 624. The habendum clause states, "forever in fee simple," which on its face points toward a conveyance of fee. Pls.' Ex. H-2.

Weighing these factors against the totality of the circumstances, the Court finds the Liddell deed conveyed an easement to Georgia Air. As in the Bearse deed, substantial consideration suggests conveyance of fee in the Liddell deed. *See* Pls.' Ex. H-2. However, as with the Bearse deed, the nature of railroad easements readily explains why a grantor might require a non-nominal fee in exchange for an easement. *See U.S. Trust Co.*, 172 U.S. at 183 (describing the characteristics of railroad easements); *see also Duggan*, 156 S.E. at 316 (describing the disruption of railroad operations on a grantor's property). As this Court has previously iterated, the mere inclusion of the terminology "in fee simple" does not necessarily indicate a conveyance of fee. *Coffee Cty.*, 110 S.E. at 215.

As with the Bearse deed, multiple aspects of the Liddell deed suggest the instrument conveyed an easement to the railroad. The Liddell deed describes the "said right of way," which the Georgia Supreme Court has held suggests intent to convey an easement. *Crutchfield*, 191 S.E. at 470. The habendum clause of the Liddell deed specifies that land was conveyed "for rail road purposes," which also weighs towards an easement under Georgia property law. *Askew*, 79 S.E.2d at 532. These phrases demonstrate Mr. Liddell's intent to limit the scope of the deed and the behavior of Georgia Air.

Additionally, the description of the land conveyed in the Liddell deed is generalized, with the transferred land described merely as "a portion of land lot number Fifty Six [sic]. . . of originally Henry now Fulton County Ga." *See* Pls.' Ex. H-2. This, like in the Bearse deed is further illustrated by the phrase "*any* portion of the Land hereinafter described through which said Rail Road *may* be constructed, run and operated." *Id*. (emphasis added). Again, the Court fails to see how a conveyance of fee, which necessarily relates to unique, specific real property, could be executed in such vague, conditional, and undefined terms.

Several additional factors weigh heavily in favor of finding that the Liddell deed conveyed an easement. The Liddell deed contained no warranty clause, which the Georgia Supreme Court has previously indicated weighs in favor of interpreting the conveyance as an easement. *Askew*, 79 S.E.2d at 532; *see also Crutchfield*, 191 S.E. at 470. Furthermore, and unlike the Bearse deed, the Liddell deed did contain a limited waiver clause, for "any injury done to the growing crop" caused by the railroad to Mr. Liddell's crops within "the two-hundred feet of right of way." *See* Pls.' Ex. H-2. This language suggests an established relationship between the grantor and the railroad, whereby Mr. Liddell was able to continue to use the land surrounding the railroad for his own benefit, with the railroad extracting protection against possible harm to Mr. Liddell's potential interest.

Moreover, the Liddell deed retains the rights of cultivation. The retention of such a right generally suggests an easement. *Hardy II*, 129 Fed. Cl. at 516. Finally, the Court is again cognizant of the "Stripes and Gorges" doctrine, discussed earlier, which discourages conveyance of fee that results in long, narrow areas of land. *Hardy I*, 127 Fed. Cl. at 10 (citing *Fambro,* 348 S.E.2d at 884 (quoting *Johnson,* 18 S.E. at 370)). As with the Bearse deed, taken together, the

totality of circumstances surrounding the Liddell deed necessarily result in a determination that the Liddell deed conveyed an easement to Georgia Air.

### d. Scope of Easements

Having determined that the Bearse and Liddell deeds conveyed easements to Georgia Air, the Court now turns to whether the easements were either broad enough to encompass the recreational trail use established by the NITU or limited to railroad uses only. *See Preseault*, 100 F.3d at 1533. As state law defines property rights, the Court looks to Georgia state precedent when determining how to interpret facial deed language. The Georgia Supreme Court has held that easements for "the purpose of running, erecting, and establishing theron [sic] a railroad track or tracks" were limited for railroad purposes only. *Crutchfield*, 191 S.E. at 470–471. Georgia state precedent also holds that the uses of an easement are limited to the reasonable requirements of the deed. *Georgia Power Co. v. Leonard*, 1 S.E.2d 579, 581 (Ga. 1939).

Georgia state law comports with Federal Circuit precedent, which has held that recreational trail usage and commercial railroad usage are categorically different. *Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004). Furthermore, the Federal Circuit has repeatedly held that recreational trail usage *exceeds* the scope of deeds limited to railroad purposes. *See Rhutasel v. United States*, 105 Fed. Cl. 220, 228 (2012); *Jackson v. United States*, 135 Fed. Cl. 436 (2017); *Buford v. United States*, 103 Fed. Cl. 522, 533 (2012); *Hardy I*, 127 Fed. Cl. at 21.

Analyzing the facial language of both the Bearse and Liddell deeds in accordance with Georgia state law and Federal Circuit precedent, the Court is persuaded that the easements conveyed in the instruments are limited to railroad purposes only. Both deeds describe the land conveyed as a "right of way," and both deeds declare the instrument is intended "for Rail Road purposes." Pls.' Ex. H-1; Pls.' Ex. H-2. Moreover, in keeping with Federal Circuit precedent, the Court finds that the recreational usage, initiated by the NITU, exceeds the scope of the easement. Having found that recreational usage violates the scope of those easements, the Court need only determine whether the railroad's easements reverted to the landowners prior to the issuance of the NITU.

### e. Effect of the NITU

As the Bearse and Liddell deeds conveyed easements to Georgia Air for railroad purposes only, Georgia Air's successor, Norfolk Southern, cannot hold more than the easement conveyed to its predecessor. Since conveyance, the record indicates that the various railroad companies using the rail line, including the most recent operator, Norfolk Southern, continuously used the easement for railroad purposes. Def.'s Ex. A at 28-29. As such, it can be inferred that the easement did not revert to the landowners, but rather, remained with Norfolk Southern who used the land within the scope of said easement until the parcel was converted into a trail.

When the STB issued the NITU in accordance with the Trails Act, the NITU severed Norfolk Southern's claim to the land, as the recreational usage created by the NITU fell outside the scope of the easements. It is a well-established principle of property law that easements run

with the land. *See generally Coggeshall Develpoment Corp. v. U.S.*, 23 Cl. Ct. 739 (1991); *Public Utility Dist. No 1 of Ferry County, Wash v. U.S.*, 20 Cl. Ct. 696 (1990); *Board of County Sup'rs of Prince William County, Va v. U.S.*, 23 Cl. Ct. 205 (1991).  As such, upon the NITU severance, all rights reverted to the successors of the original grantors in the Bearse and Liddell deeds.  Among those successors are the plaintiffs in this matter.  Joint Stipulation at 2.

Plaintiffs, as the rightful successors to the land abutting the railroad, retain the rights to the property in dispute.  Therefore, the STB's conversion of the rail line into a recreational trail, violated the terms of the deed and scope of the easement, which constitutes a Fifth Amendment taking of the plaintiffs' land.  The United States is liable for the taking, and the plaintiffs are owed just compensation.

### IV.   Conclusion

For the reasons set forth above, plaintiffs' MOTION for Partial Summary Judgment is **GRANTED**.  Defendant's CROSS-MOTION for Partial Summary Judgment is **DENIED**.  A telephonic status conference will be scheduled in the coming weeks to discuss any further procedural matters.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge